**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | |
|---|---|
| In re:<br><br>Xoco Transport, LLC,[1]<br><br>Debtor. | Case No. 26-70297 (EVR)<br><br>Chapter 11 |

**DECLARATION OF CARLOS COLLAZO-GONZALEZ IN SUPPORT OF THE DEBTOR'S FIRST DAY MOTIONS AND VOLUNTARY PETITION**

I, Carlos Collazo-Gonzalez, do hereby state under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. My name is Carlos Collazo-Gonzalez. I am an owner and the Authorized Representative of Xoco Transport, LLC, the debtor entity in this bankruptcy case (the "***Debtor***" or "***Xoco Transport***"). I am over the age of 18 and am competent to make this *Declaration in Support of the Debtor's First Day Motions and Voluntary Petition*.

2. On September 16, 2026, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. I signed the petition to authorize the filing and related supporting documents.

3. Founded in March 2018, Xoco Transport, LLC is a Texas limited liability company engaged in long-haul trucking and freight transportation. The Debtor transports freight throughout the United States, including routes from South Texas and the McAllen area to the Midwest, Northeast, Carolinas, Chicago, New York, and other national markets. Although certain loads involve produce originating in Mexico or South Texas, the Debtor's core business is domestic freight transportation within the United States.

4. The Debtor hauls a variety of freight based on customer demand and market conditions. Outbound loads from South Texas consist primarily of produce, while return loads may include meat, mail, beer, water, and other available freight. The Debtor obtains work through customer relationships associated with Mirasoles Produce USA LLC, a related produce company, as well as through spot-market and load-board opportunities. The Debtor is not dependent on any single customer or route and generates revenue by deploying its trucks and trailers across multiple markets.

5. The Debtor's revenue history further reflects the scale of its pre-petition business activity:

[1] The last four digits of the Debtor's federal tax identification number are 4475.

| Fiscal Year | Revenue |
|---|---|
| 2026 (to Petition Date) | $6,790,559.36 |
| 2025 | $11,325,166.87 |
| 2024 | $15,370,057.50 |

6. The Debtor's financial distress arose primarily from an unsustainable equipment-debt structure rather than an inability to generate freight revenue. The Debtor's truck and trailer financing obligations require approximately $186,000.00 in monthly payments, with total equipment-related debt of approximately $2.4 million. A substantial portion of that debt is owed to Daimler, with additional obligations owed to approximately six lenders under twenty-four financing contracts. Although the Debtor continued to generate substantial revenue, these fixed debt-service obligations materially strained liquidity, reduced available working capital, and, at times, required financial support from Mirasoles. The Debtor also faced repossession involving trucks and trailers necessary to generate revenue and continue serving its customers.

7. Faced with these liquidity constraints and the threat of losing essential revenue-producing equipment, the Debtor commenced this Chapter 11 case to preserve its business as a going concern and restructure its secured obligations over a feasible period. Through Chapter 11, the Debtor intends to evaluate its trucks and trailers and the debt associated with each asset, restructure secured claims where appropriate and consistent with collateral value, preserve equipment necessary to its operations, and repay creditors from future operating cash flow. The Debtor believes that restructuring its debt-service obligations, rather than liquidating an operating business, will maximize value for the estate and its creditors.

8. Contemporaneously with the filing of the petition, the Debtor filed the following motions on an expedited basis:

**a.** ***The Debtor's Emergency Motion for Orders (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay as Needed, and (IV) Scheduling a Final Hearing.***

The Debtor seeks immediate authority to use Cash Collateral, consisting primarily of accounts receivable and their proceeds, to fund payroll and other ordinary-course operating expenses necessary to continue its trucking operations. Some of those funds may be subject to, arise from, or otherwise relate to the RTS Factoring Arrangement, under which RTS acts as a true freight factor and may purchase qualifying accounts at the price provided in the RTS Factoring Agreement. The Debtor has notified RTS of the commencement of this case, and RTS does not oppose the Debtor's prosecution of this case. The Debtor does not seek to compel RTS to purchase post-petition accounts receivable, make additional advances, waive any contractual termination right, or require the Court to determine the ownership or characterization of any receivable or proceeds.

b. ***The Debtor's Emergency Motion for Entry of an Order Authorizing the Debtor to Maintain and Perform Obligations to Employees in Accordance with Pre-Petition Practices.***

The Debtor seeks authority to continue paying wages, compensation, payroll taxes, and reimbursable business expenses, including amounts earned or incurred before the Petition Date. The Debtor employs office personnel and utilizes contracted drivers who are essential to its trucking operations. Because certain compensation and related obligations may have accrued before the Petition Date, the requested relief is necessary to avoid disruption to the Debtor's workforce and operations.

c. ***The Debtor's Emergency Motion for Entry of an Order (I) Authorizing the Debtor to Maintain Existing Bank Accounts for a Limited Period, (II) Continue Use of Payment Systems and (III) Granting Related Relief.***

The Debtor seeks authority to continue using its existing bank accounts and payment systems for a limited period while transitioning to debtor in possession accounts in accordance with the United States Trustee Guidelines. The Debtor relies on these accounts to receive customer payments, process payroll, pay vendors, and manage daily cash flow. Immediate disruption of these accounts and payment systems could delay collections and payments and unnecessarily impair the Debtor's operations during the early stages of this Chapter 11 case.

d. ***The Debtor's Emergency Motion for Entry of an Order Authorizing the Payment of Pre-Petition Claims of Critical Vendors and Utilities.***

The Debtor seeks authority to pay certain de minimis or timing-based pre-petition amounts arising in the ordinary course of business, together with any pre-petition balance owed to Pilot Flying J, the Debtor's principal fuel provider. The Debtor operates a fleet of more than 100 18-wheelers and depends on its existing relationship with Pilot to fuel its vehicles throughout the United States. Although the Debtor historically pays Pilot approximately weekly and was not delinquent before the Petition Date, the timing of the bankruptcy filing may leave a pre-petition balance attributable to fuel already purchased. The Debtor also seeks authority to continue paying utility providers whose ordinary-course invoices may include charges incurred before the Petition Date. The requested relief is necessary to maintain the Debtor's essential fueling relationship and avoid disruption to its operations.

9. The relief requested in the First Day Motions is necessary to stabilize the Debtor's operations and preserve its going-concern value. In particular, immediate authority to use Cash Collateral, including funds subject to, arising from, or otherwise related to the RTS Factoring Arrangement to the extent the Debtor has an interest in those funds, is necessary to pay employees, fuel providers, vendors, and other ordinary-course operating expenses. The requested relief will allow the Debtor to maintain operations while providing the adequate protection described in the Motion and Interim Order to parties asserting interests in Cash Collateral. Without that relief, disruption to the Debtor's cash flow, workforce, vendor relationships, or trucking operations would

materially impair the value of the estate. The Debtor does not ask the Court to determine whether RTS owns any receivable or proceeds, whether the RTS Factoring Arrangement is a true sale or a secured transaction, or whether the RTS Factoring Agreement has terminated or remains in effect.

10. I believe the Debtor operates a viable business capable of generating substantial revenue. Chapter 11 will allow the Debtor to address its unsustainable debt-service obligations while continuing operations and preserving value for its creditors.

11. I believe the Debtor will be able to propose and confirm a feasible plan of reorganization and that restructuring the Debtor through Chapter 11 is in the best interests of the Debtor and its creditors.

Signed under penalty of perjury under 28 U.S.C. § 1746 on September 16, 2026.

*/s/ Carlos Collazo-Gonzalez*
Carlos Collazo-Gonzalez
President and
Authorized Representative